IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| Bob Schmalz, an Illinois citizen | ) | |
|     Plaintiff, | ) | |
| | ) | |
| | ) | |
|     v. | ) | Judge |
| | ) | Magistrate Judge |
| Helen Hierta, a Michigan citizen | ) | |
| | ) | **COMPLAINT FOR** |
|     Defendant. | ) | **DECLARATORY JUDGMENT** |

Plaintiff, Bob Schmalz ("Schmalz"), by and through its undersigned attorneys, for his Complaint against Defendant, Helen Hierta ("Hierta"), alleges as follows:

### NATURE OF ACTION

1. This is an action for declaratory judgment arising under the copyright laws of the United States, 17 U.S.C. § 101, et seq. By this action, Schmalz seeks a declaration that he is the author and/or the exclusive owner of the copyright in the literary work known as "*Take Me or Change Me*" (the "Work") and that Hierta's Registration for the Work was obtained fraudulently.

### JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) with respect to the claims arising under the Copyright Act, 17 U.S.C. § 101, et seq. and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because this is an action brought pursuant to the Copyright Act, Hierta conducts business in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## THE PARTIES

4. Schmalz is an individual and resident of the State of Illinois with an address at 5854 N. Markham Ave., Chicago IL 60646.

5. Upon information and belief, Hierta is a an individual and resident of the State of Michigan with an address at 4443 s US 23 Highway, Greenbush MI 48738-9742.

6. Events giving rise to the claims in the Complaint occurred within this Judicial District. This Court has personal jurisdiction over Hierta.

## FACTUAL BACKGROUND

5. Schmalz and Hierta first met in 2010 at Optima Health Institute in Lemon Grove California where Schmalz was receiving biannual treatment for a medial condition. See *Affidavit of Bob Schmalz*, attached hereto as Exhibit A.

6. During an intimate conversation, Schmalz explained to Hierta how he had been involved in a lot of criminal activity earlier in life, had been to Illinois Department of Corrections (prison) three times and, *having turned his life around*, has been a pillar of the community since 1989.

7. Schmalz shared a few stories about his life on the street and how one of his "Fences" suggested he write a book - already in progress - with a ghost writer from Illinois.

8. Schmalz claims exclusive original authorship to the narrative of Schmalz's colorful, drug-addled and sometimes criminal exploits - his life story - as related by Schmalz to Hierta.

9. Hierta shared that she had published a book of poems and offered to write as a ghost writer for Schmalz.

2

10. Schmalz accepted Hierta's offer to act as his "ghost writer" for the sole purpose of recording his life story in a tangible form (the "Work") for later use and commercialization

11. In 2010, Per Hierta's invitation, Schmalz and Hierta met at Hierta's mother's home in Mt. Dora Michigan, where Hierta was caring for her mom who just came from a nursing home.

12. At this meeting, Schmalz brought notes and dictated to Hierta and Hierta typed.

13. At all times, Schmalz intended to compensate Hierta for her services. When asked how she wanted to be compensated, Hierta stated to Schmalz "it was her privilege to write my story since I had turned my life around she was blessed to be writing for me." She stated further that "this is what God wanted her to do."

14. Between 2010 and 2013 Schmalz visited Hierta in Michigan at least four (4) times. During visits Schmalz often, if not always, paid for meals and other luxuries including trips to California and Florida and therapeutic treatments for Hierta.

15. Schmalz also left cash gifts intended to offset any lodging expenses associated with his stay.

16. In 2013, Schmalz and Hierta contacted Leslie Whitaker, a writer from Florida, for a comparison price quote for ghost writing services equivalent to what Hierta had performed and was quoted $30,000.

17. Separately and subsequently, Hierta also contacted writer Cecilia Wolrich.

18. Wolrich and Hierta travelled to Chicago to meet with Schmalz. As compensation for services, Schmalz paid Wolrich's and Hierta's air fare/transportation costs, lodging and meals.

19. As additional compensation for Hierta's services, in 2014 Schmalz provided two (2) employees from his construction business to travel to Michigan and preform work on Hierta's property, an Art Studio.

20. Schmalz paid the workers $50/per hour, each, for a total of thirty (30) hours, at a total cost to Schmalz of $3,000.00.

21. At some point, Schmalz and Hierta discussed the commercial potential for publishing the Work as a book and promoting Schmalz and his story to in person audiences, to generate some money. Schmalz suggested splitting the profits 50/50.

22. At no time did Schmalz express to Hierta that he wanted her to have the copyright to the Work.

23. In 2015, Schmalz, Hierta and Schmalz's daughter Jennifer met writer Judith Guest at a book signing, where Schmalz told Guest about his story and the attempt to write it down, and offered to pay Guest to do the final editing.

24. On October 22, 2015, counsel for Schmalz sent a letter and ghost writer Agreement ("Writer Agreement") to Hierta seeking to memorialize the parties agreement regarding the ownership of the copyright by Mr. Schmalz. A true and correct copy of the letter is attached hereto as <u>Exhibit B</u>.

25. In November 2015, Hierta contacted Schmalz regarding the proposed Writer Agreement.

4

26. On November 29, 2015, counsel for Schmalz sent a revised Writer Agreement to Hierta, offering Hierta joint authorship and 50/50 share on the profits of sales from the Work.

27. On December 14, 2015, Hierta wrote an email to counsel for Schmalz stating that Schmalz and Hierta met in Chicago on December 1, 2015, that Hierta had created and was the sole author of the Work addressed by the proposed Writer Agreement, and that Hierta had registered the copyright. A true and correct copy of the December 14, 2016 email is attached hereto as Exhibit C.

28. Schmalz never met with Hierta on December 1, 2015.

29. On information and belief, without Schmalz's knowledge or permission, Hierta applied to register the Work with the Copyright Office claiming exclusive authorship with the intent of deceiving Schmalz and preventing the perfection of his rights in the Work.

30. Through counsel, Hierta and Schmalz exchanged correspondence attempting to discern the status of Hierta's application to register the copyright in the Work, if any, as well as the question of authorship. Hierta refuses to provide Schmalz with a tangible copy of the Work.

31. On March 28, 2016, Hierta, through counsel, demanded the sum of $100,000.00 to relinquish the Work and correct the copyright registration.

32. Schmalz is the sole and exclusive author of the Work.

33. In the alternative, the parties mutually agreed and intended that the Work was a specially-commissioned work made for hire and that Schmalz was intended to be the sole and exclusive copyright owner.

## COUNT I

## DECLARATION OF

## AUTHORSHIP UNDER THE COPYRIGHT ACT

34. An actual controversy has arisen and now exists between Hierta and Schmalz concerning whether Schmalz is the author and/or copyright owner in the work, or whether Hierta's application to register the copyright in the work knowingly contained inaccurate information, which if known by the copyright office, would have precluded Hierta's registration.

35. This case seeks a declaratory judgment that Plaintiff, Bob Schmalz ("Schmalz"), is the exclusive author and the sole copyright owner of the literary work known as "*Take Me or Change Me*" (the "Work"). Schmalz also seeks to cancel the copyright registration in the name of Defendant Helen Hiterta ("Hierta"), if any, to the Work.

36. As such, Schmalz desires a judicial determination of the parties' rights and duties with respect to the copyright rights asserted by Hierta. A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights as determined by the Court.

## COUNT II

## DECLARATION OF

## INVALIDITY OF HIERTA'S REGISTRATION

37. The Copyright Act provides that a copyright holder must register its copyright in a work with the United States Copyright Office before filing suit for infringement.

6

38. One cannot satisfy this precondition by duping the Copyright Office into issuing a certificate of registration based on a false claim of copyright ownership. *Delivermed Holdings LLC v. Schaltenbrand*, 734 F.3d 616 (7th Cir., 2013).

39. The Copyright Act allows for the invalidation of registrations obtained by knowing misrepresentations of material facts. *See* 17 U.S.C. § 411(b)(1)(A)-(B); *Delivermed v. Schaltenbrand*, 734 F.3d 616.

40. As stated above, Hierta's application included "inaccurate information:" her claim of exclusive authorship; and the information was included "with knowledge that it was inaccurate:" she knew that she had agreed to be a ghost writer for the sole purpose of recording Schmalz's original work of creative authorship.

41. The inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration since if the Register would not have issued a registration to Hierta is she was no in fact the author.

WHEREFORE, Schmalz prays for a judgment against Hierta as follows:

A. For judgment declaring that Schmalz is the sole and exclusive author of the Work;

B. For judgment declaring that Hierta's application and Registration (if any) is invalid;

C. Order Hierta to provide to Schmalz all copies of the Work, written and electronic and any materials submitted in connection with the application to register the copyright in the Work;

D. Awarding Schmalz's costs, expenses and reasonable attorneys' fees as permitted by law; and

      E.      Awarding Schmalz such other and further relief as the as the Court may deem just and proper.

## JURY DEMAND

Schmalz demands a trial by jury.

Respectfully submitted,

By: *[signature]*

One of Its Attorneys

David M. Adler, Esq.
David M. Adler, Esq. & Associates, PC
300 Saunders Rd. Ste., 100
Riverwoods, IL 60015
Phone & Fax (866) 734-2568
Email david@adler-law.com
Attorney Reg. #6242403

# AFFIDAVIT

Exhibit A

STATE OF ILLINOIS )
)
COUNTY OF COOK )

The undersigned, Bob Schmalz, under oath and intending to be bound, hereby avers, deposes and states as follows:

1. I first me Helen Hierta ("Hierta") in 2010 at Optima Health Institute in Lemon Grove California ("Optima").
2. I go to Optima twice a year to receive treatment for a medial condition.
3. During an intimate conversation with Hierta I explained how I had been involved in a lot of criminal activity earlier in my life, that I had been to Illinois Department of Corrections (prison) three times and, *having turned my life around*, I have been a pillar of the community since 1989.
4. I shared a few colorful stories about my life on the street and how one of my "Fences" suggested I write a book - already in progress - with a ghost writer from Illinois.
5. I shared my life story with Hierta for the sole purpose of having her write it down for later use and commercialization.
6. Hierta told me that she had published a book of poems and offer to write as a ghost writer for me.
7. I accepted her offer to act as my "ghost writer."
8. I believed, and it was my intent that I was the only owner of rights in the "story."
9. I never intended to grant any rights to Hierta.
10. In 2010, per her invitation, I met with her at her mother's home in Mt. Dora Michigan, where she was caring for her mom who just came from a nursing home.
11. At this meeting, I brought notes and dictated to Hierta and Hierta typed.
12. At all times, I intended to compensate Hierta for her services. I offered to compensate her for her services.
13. When asked how she wanted to be compensated, Hierta stated to me "it was her privilege to write my story since I had turned my life around she was blessed to be writing for me." She stated further that "this is what God wanted her to do."
14. Between 2010 and 2013 I visited Hierta there at least four (4) times. During visits I often, if not always, paid for meals and other luxuries, including trips to California and Florida and therapeutic treatments.
15. I also left cash gifts to offset any lodging expenses associated with my stay.
16. In 2013, Hierta and I contacted Leslie Whitaker, a writer from Florida, for a comparison price quote for ghost writing services equivalent to what Hierta had performed.
17. Whitaker quoted us $30,000.
18. Separately and subsequently, Hierta also contacted writer Cecilia Wolrich.
19. Wolrich and Hierta travelled to Chicago and, as additional compensation for services, I paid Wolrich's and Hierta's air fare/transportation costs, lodging and meals.
20. As additional compensation for Hierta's services, in 2014 I provided 2 employees from my construction business to travel to Michigan and preform work on Hierta's property, an Art Studio.

me B.S.

21. The workers were paid $50/per hour each for a total of 30 hours, at a total cost to ~~I~~ of ~~$1,500.00~~ $3,000.00.
22. At some point, we discussed the commercial potential for publishing the life story as a book and promoting me and my story to in-person audiences to generate some money. I suggested splitting the profits 50/50.
23. I never told Hierta that I wanted her to have the copyright to the Work.
24. On October 30 2015, Hierta and I met in Illinois with Commander McNerny from Niles Police dept. and Charles Sampson in Collinsville and Hierta introduced herself as my ghostwriter in both meetings.
25. In 2015, me, my daughter Jennifer and Hierta met writer Judith Guest at a book signing, where I told Guest about my story and the attempt to write it down, and offered to pay Guest to do the final editing.
26. On October 22, 2015, my legal counsel, attorney David Adler, sent a letter and the proposed ghost writer agreement ("Writer Agreement") to Hierta seeking to finalize our agreement regarding the ownership of the copyright by me.
27. In November 2016, she contacted me about the proposed Writer Agreement.
28. I told Adler to send an updated Writer Agreement to Hierta, offering Hierta joint authorship and share on the profits of sales from the Work.
29. On December 14, 2016, Adler forwarded and email written by Hierta stating Hierta and I met in Chicago on December 1, 2015, that Hierta had created and was the sole author of the Work addressed by the proposed Writer Agreement, and that Hierta had registered the copyright.
30. I never met with Hierta on December 1, 2015.
31. I have firsthand knowledge of the facts and statements contained herein.

The undersigned has read and understands the foregoing and does hereby swear and affirm that the representations contained therein are true.

_Bob Schmalz_ — Bob Schmalz

STATE OF ILLINOIS    )
                     )
COUNTY OF COOK       )

This Affidavit of <u>Bob Schmalz</u> was subscribed and sworn to before me on this April 8 2016.

    AS WITNESS my hand and Notarial Seal.

"OFFICIAL SEAL"
MARIUS I SCAUNAS
Notary Public - State of Illinois
My Commission Expires May 12, 2018

_Marius I. Scaunas_

Notary Public

**Adler Law Group**

Safeguarding Ideas, Relationships & Talent®

300 Saunders Road, Suite 100
Riverwoods, Illinois 60015
Toll Free (866) 734-2568
www.adler-law.com

Exhibit B

October 22, 2015

Via email to helen@nobel-ideas.com

Helen Hierta
4443 South US 23
Greenbush, MI 48738

Re: Bob Schmalz

Dear Ms. Hierta,

I am writing on behalf of my client, Bob Schmalz in connection with the ghost-writing services you are providing to him. As I am sure M. Schmalz has mentioned, I have recommended that he have you sign a work-for-hire/assignment of rights agreement to ensure that he has clean title to the results and proceeds of the writing services you are providing to him.

I have enclosed a copy of the proposed agreement for your signature. Please note that since I do not know the financial terms of the arrangement and I do not know the working title of the manuscript, I have left blanks for those items. Please print, read, sign and return a signed copy to me via email, postal mail or fax.

Please let me know if you have any questions or comments. I look forward to your prompt and favorable response.

Sincerely,

David M. Adler, Esq.

DMA/jb

Encl. (1)

CC: B. Schmalz

**Subject: Re: Co-author agreement**

From: Helen Hierta - To: David M. Adler - Date: December 14, 2015 at 9:09 AM

Exhibit C

Mr. Adler,

When Bob and I had a meeting in Chicago on December 1, 2015, we discussed the fact that I had created the work you are referring to, tentatively titled Take Me Or Change Me, and agreed that I would register the copyright.

I have registered the copyright, so let's proceed from there.

Helen Hierta

On Sun, Nov 29, 2015 at 9:06 AM, David M. Adler <david@adler-law.com> wrote:

> ...
>
> Helen,
>
> Bob asked me to correct the agreement to reflect that each of you is a joint author of the work.
>
> Attached please find an updated version of the agreement reflecting that.
>
> Please let me know if you have any questions or comments.
>
> Sincerely,
>
> David M. Adler  l  Adler Law Group
> Safeguarding Ideas, Relationships & Talent ®
> 300 Saunders Road, Suite 100
> Riverwoods, Illinois 60015
> Direct: (866) 734-2568
> 2015 Illinois Super Lawyer
>
> David@Adler-Law.com l  Web  l  Blog  l  Twitter  l  LinkedIn  l  Ping Newsletter ®
>
> The information in this electronic mail is intended for the named recipients only. It may contain privileged and confidential matter. If you have received this electronic mail in error, please notify the sender immediately by replying to this electronic e-mail or by collect call to (866) 734-2568.  Do not disclose the contents to anyone. Thank you.